UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

TARYN BROWN,

                Plaintiff,        <u>MEMORANDUM AND ORDER</u>

  -against-                Civil Action No.
                                  CV-08-3653(DGT)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

--------------------------------X

TRAGER, J.:

    Plaintiff Taryn Brown ("plaintiff" or "Brown") brings this
action pursuant to the Social Security Act, 42 U.S.C. § 405(g),
to review the determination of the Commissioner of Social
Security ("Commissioner") denying plaintiff's request for
Disability Insurance Benefits ("DIB") and Supplemental Security
Income ("SSI").  Plaintiff is seeking DIB and SSI for numerous
disabilities including, inter alia: lower back pain, sciatica,
dizziness, chronic headaches, HIV, hemorrhoids, osteoarthrosis,
an ulcer and hypertension.  Plaintiff also seeks attorney's fees
and lost benefits dating back to her original application.  The
Commissioner moves pursuant to Federal Rule of Civil Procedure
12(c) for judgment on the pleadings affirming his decision
denying benefits.  For the following reasons, the Commissioner's
motion is granted.

1

## Background

### (1)

### Procedural History

Plaintiff filed an application for SSI and DIB on October 11, 2005, alleging disability beginning September 12, 2005. Administrative Record ("A.R.") 51. On March 22, 2006, the Social Security Administration ("SSA") denied plaintiff's claim for DIB and SSI. Id. at 14. After her claim was denied, plaintiff obtained a hearing before Administrative Law Judge Michael Gewirtz ("ALJ"), which was held on August 16, 2007. Id. at 207. On September 18, 2007, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act ("the Act") and thus not entitled to the requested benefits. Id. at 22. Specifically, the ALJ found that plaintiff was "capable of sedentary work and could perform the clerical associate job as it is performed in the national economy." Id.

On September 26, 2007, plaintiff requested review of the ALJ's decision by the SSA Appeals Council, which was denied on July 18, 2008. Id. at 3, 10. In response, plaintiff filed the present appeal in the Eastern District of New York on September 9, 2008.

**Plaintiff's Personal History and Self-Reported Symptoms**

Plaintiff is a 53-year-old woman with a high school diploma. Id. at 44, 49. From approximately October 17, 1980 to September 12, 2005, plaintiff was employed as a clerical associate for the Department of Corrections ("DOC"). Id. at 44-51. While employed at the DOC, plaintiff performed various clerical work, including filing, typing, answering phones, counting and scanning cash bail payments and moving file boxes weighing up to twenty pounds. Id. at 45, 215-16. Plaintiff was terminated on September 12, 2005 and has not worked since then.[1] Transcript of Hearing Before Judge Trager, Dec. 16, 2009 ("Trager Hearing") at 2:25, 3:10-15; A.R. 162, 218.

In her initial disability report to the SSA, plaintiff claimed that she stopped working due to arthritis in her spine and left arm, lower back pain, head injury, dizziness, nerve problems, chronic headache, sciatica in her left leg and

---

[1] The exact reason for plaintiff's termination from the DOC is unclear from the record. However, at the hearing before the ALJ, plaintiff's attorney stated that plaintiff was terminated because of "her non-presence at work . . . which . . . [was] based on her illness and inability to go to work." A.R. 218. Additionally, a DOC letter to plaintiff dated June 20, 2006 notes that plaintiff was "continuously absent" and "unable to perform . . . by reason of a work-related disability . . . ." Id. at 162, 199.

difficulty walking.[2]  A.R. 43-44.  At her hearing before the ALJ,
she testified that she suffers from, inter alia, asthma, back
spasms, sciatica, HIV,[3] palpitations, depression, sleeplessness,
weight loss, an ulcer, high blood pressure, constipation,
osteoarthritis and general joint pain.  Id. at 223-230.
Plaintiff testified that as a result of these conditions, she is
confined to her bed for most of the day and is unable to lift
heavy objects or sit for more than thirty minutes at a time.  Id.
at 237-38, 242.


### (3)

### Medical Evidence Before the ALJ

The medical evidence in the record dates from August 2002 to
August 2007 and includes medical reports from various hospitals
including East New York Diagnostic and Treatment Center ("East
New York"), Central Brooklyn Medical Group ("CBMG"), Brookdale
University Hospital and Medical Center ("Brookdale") and Kings
County Hospital Center ("Kings County").

---

[2] Plaintiff's alleged disability was not caused by a
specific injury or incident.  Id. at 118.

[3] Plaintiff was not diagnosed with HIV until March 9, 2007.
Id. at 180, 219.

**a. Medical Evidence Prior to September 12, 2005**

On August 26, 2002, plaintiff was treated by Dr. Emanuel Gelin at East New York for dizziness and inflamation of her hemorrhoids and back pain. _Id._ at 111-12. Dr. Gelin prescribed Vioxx for plaintiff. _Id._ On August 3, 2004, plaintiff went to CBMG, complaining of pain in her back and left leg. _Id._ at 91-92. Dr. Mark Grand diagnosed plaintiff with hypertension, a peptic ulcer and sciatica in her left leg and prescribed Vicodin, Norvasc and Prevacid. _Id._ On the same day, a radiographic exam of plaintiff's lumbosacral spine ordered by Dr. Grand indicated that her spinal curvature and alignment were within normal limits and that there was no evidence of degenerative changes. _Id._ at 101.

On December 22, 2004, plaintiff returned to CBMG complaining of hip and leg pain, stiffness, diarrhea and abdominal pain. _Id._ at 92. A December 29, 2004 radiographic exam of plaintiff's cervical spine ordered by Dr. Grand indicated that her spinal curvature and alignment were within normal limits. _Id._ at 100. A January 4, 2005 radiographic exam of plaintiff's left hip ordered by Dr. Grand showed no evidence of degenerative joint disease. _Id._ at 83.

**b. Medical Evidence On or After September 12, 2005**

    **i. Plaintiff's Hospital Visits**

On September 19, 2005, plaintiff visited CBMG after "bumping" her knee in her home. Id. at 86. Dr. Grand diagnosed plaintiff with a contusion but noted that she maintained full range of motion of her knee. Id. On November 9, 2005, plaintiff was treated in the emergency room at Brookdale by Dr. Mikhail Charny for a laceration on her forehead and other neck pains.[4] Id. at 69. A CT scan of plaintiff's head was negative and revealed no intercranial injury. Id. at 69, 178. Her toxicology report indicated the presence of cocaine.[5] Id. at 177.

On November 16, 2005, plaintiff went to East New York for pain in her left arm. Id. at 107-08. Dr. Mohammed Q. Khan prescribed a low to moderate pain management routine and noted that plaintiff suffered from asthma.[6] Id. On November 28, 2005, plaintiff returned to East New York with cold symptoms, nasal congestion and dizziness. Id. at 105. Dr. Khan conducted a physical examination and found that with the exception of a

---

[4] According to the emergency room records, plaintiff's son pushed her against a wall, causing the injury. Id. at 69.

[5] At the hearing before the ALJ, plaintiff testified that she stopped using cocaine after testing positive in the toxicology report taken on November 9, 2005. Id. at 234.

[6] An x-ray of plaintiff's chest taken on May 24, 2006 at East New York also indicated that plaintiff suffered from asthma. Id. at 146.

slightly elevated blood pressure, post nasal drip and nasal
edema, plaintiff's overall condition was within normal limits.
Id. Plaintiff was diagnosed with hypertension and allergic
rhinitis and prescribed Albuterol, an asthma medication. Id. at
106.

On March 22, 2006, plaintiff was treated by Dr. Sikiru
Gbadamosi at Brookdale for lower back pain and instructed to rest
for a few days and apply a heating pad to her back. Id. at 150.
A July 24, 2006 x-ray of plaintiff's left shoulder ordered by Dr.
Gelin at East New York showed a bone island in the proximal
humerus but was otherwise negative. Id. at 147. At this time,
Dr. Gelin diagnosed plaintiff with left-sided radiculopathy.[7]
Id.

On December 18, 2006, Dr. Gelin completed a "Physician's
Wellness Rehabilitation Plan Report." Id. at 139-40. In this
report, he diagnosed plaintiff with general osteoarthritis,
radiculopathy, a peptic ulcer, asthma, lower back pain, allergic
rhinitis and hemorrhoids. Id. Dr. Gelin noted that more
information was needed to determine plaintiff's functional
capacity to participate in work-related activities.
Id.

On January 23, 2007, plaintiff visited Kings County with

_____

[7] A neurologic exam taken on March 5, 2007 also diagnosed
plaintiff with radiculopathy. A.R. 148.

complaints of back, knee and hip pain. <u>Id.</u> at 149.  An orthopedic

exam taken by Dr. William Urban and Annisha Creary, a Physician's

Assistant, diagnosed plaintiff with a decreased range of motion

of her spine.  However, following the exam, Ms. Creary signed a

note stating that plaintiff was able to return to work

immediately.  <u>Id.</u> at 187.

A March 28, 2007 x-ray of plaintiff's lumbar spine ordered

by attending physician Dr. Gerard Moskowitz at Kings County

revealed a grade 1 spondylolisthesis of the L4 vertebra forward

onto the L5 vertebra, a narrowing of the intervertebral disc

spaces, a mild hypertrophic osteophyte formation and scoliosis

with convexity to the right.  <u>Id.</u> at 182.  An April 13, 2007 x-

ray of plaintiff's cervical spine ordered by attending physician

Dr. Michael Siegel at Kings County found spondylosis at the C5-C6

disc space, degenerative retrolisthesis and Luschka joint

osteophytes.  <u>Id.</u> at 181.


**ii. Non-Physician Treating Sources: Dr. Leslie Dreifus,**

**Chiropractor**

Plaintiff began to see Dr. Leslie Dreifus, a chiropractor,

in late 2005.  <u>Id.</u> at 135.  On October 3, 2005, Dr. Dreifus

stated in a "Certification of Medical Care" that plaintiff was

under her care and that from September 12, 2005 to October 3,

2005, plaintiff was "totally incapacitated."  <u>Id.</u> at 142.  Dr.

Dreifus also noted in the certification that plaintiff could return to work but that until further notice, she was restricted from lifting, pulling or any light duties.  Id.

On April 17, 2007, Dr. Dreifus filled out a SSA form that detailed plaintiff's ability to perform work-related activities. Id. at 130.  On the form, Dr. Dreifus noted that plaintiff: (1) could lift and carry up 20 pounds only occasionally;[8] (2) could sit and stand without interruption for only two hours at a time; (3) could walk without interruption for only an hour; and (4) could reach and pull only occasionally.  Id. at 131-32. Dr. Dreifus also noted that plaintiff required a cane to ambulate and that plaintiff could not climb, balance, stoop, kneel or crawl.  Id. at 133.  However, Dr. Dreifus stated on the margin of the form, "I haven't seen patient since 5/24/06.  Condition might have changed."  Id. at 130.  Additionally, Dr. Dreifus noted that she did not know if plaintiff could perform certain activities such as shopping, walking a block at a reasonable pace, using public transportation, climbing a few steps at a reasonable pace, caring for her personal hygiene and preparing food for herself. Id. at 135.

---

[8] On the SSA form, "occasionally" was defined as "very little to one-third of the time."  Id. at 130.

**iii. Examining Consulting Physicians: Dr. Louis Tranese**, M.D.

Plaintiff underwent a consultative orthopedic examination on March 7, 2006, performed by Dr. Louis Tranese. <u>Id.</u> at 118. In his evaluation, Dr. Tranese reviewed plaintiff's x-ray films and noted that she had generalized degenerative joint disease of both the cervical and lumbar spines with a lumbar retrolisthesis of the L5 on S1 vertebrae. <u>Id.</u> He noted that plaintiff suffered from episodic neck pain, occurring approximately three times a week and that this pain was localized without radiation to the upper extremities. <u>Id.</u> Dr. Tranese also stated that plaintiff suffered from daily lower back pain, "waxing and waning in intensity."[9] <u>Id.</u>

During Dr. Tranese's examination, plaintiff was able to walk on her heels and toes, squat fully, rise from a chair without difficulty and did not need help getting on and off the exam table. <u>Id.</u> at 119-20. Her hand and finger dexterity were within normal limits, and an examination of her cervical spine and upper and lower extremities produced normal results. <u>Id.</u> at 120. Dr. Tranese found that there was "mild, vague tenderness to palpation of the bilateral lower lumbar, and upper lumbar," but no joint or sciatic tenderness, scoliosis or kyphosis. <u>Id.</u> He

---

[9] According to Dr. Tranese's report, plaintiff graded her neck pain as a five out of ten and her back pain as an eight out of ten.

also noted that plaintiff had mild limitations with frequent forward bending, squatting, kneeling, crouching and lifting objects but had no limitations with sitting, standing or ambulating.  <u>Id.</u> at 121.

Dr. Tranese also detailed plaintiff's daily activities, noting that she occasionally required the help of her children for household chores when her pain was severe and that she was able to shower, bathe, dress, and groom herself daily.  <u>Id.</u> at 119.

### iv. Vocational Evidence

Pat Green ("Green"), a vocational expert, testified at the hearing before the ALJ regarding plaintiff's past relevant work. Based on the U.S. Department of Labor Dictionary of Occupational Titles, Green classified plaintiff's clerical associate position as semi-skilled and sedentary.  <u>Id.</u> at 257.  Green testified that an individual with plaintiff's residual functional capacity ("RFC") for sedentary exertion could satisfy the demands of a clerical associate as it is performed in the national economy. <u>Id.</u> at 261.

# Discussion

## (1)

## Standard of Review

"A district court may set aside the [ALJ's] determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. See Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). Accordingly, the reviewing court may not "substitute its own judgment for that of the Secretary, even if it might have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)).

## Standards for Entitlement to Benefits

To be eligible for disability benefits, a claimant must establish that she was disabled within the meaning of the Act prior to the expiration of her insured status. 42 U.S.C. §§ 423(a)(1)(A), 423(c). The SSA has promulgated a five-step sequential analysis that an ALJ must use to determine whether a claimant qualifies as disabled. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a "severe" impairment that limits her work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if such an impairment exists, the ALJ evaluates whether the impairment meets or equals the criteria of an impairment identified in the Commissioner's appendix of listed impairments. 20 C.F.R. § 404, 1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ must resolve whether the claimant has the RFC to perform her past relevant work.[10]  20 C.F.R. § 404.1520(a)(4)(iv). Fifth, if the claimant cannot perform her past work, the ALJ determines whether there is other work that the claimant could perform. 20 C.F.R. §

---

[10] This step requires that the ALJ first make an assessment of the claimant's RFC generally. 20 C.F.R. § 404.1520(e), § 404.1545.

404.1520(a)(4)(v).  The claimant bears the burden of proof as to
the first four steps.  See, e.g., Balsamo v. Chater, 142 F.3d 75,
80 (2d Cir. 1998).  If the claimant proves that her impairment
prevents her from performing past relevant work, the burden
shifts to the Commissioner at the final step.  Id.


**(3)**

**The ALJ's Decision**

In the instant case, the ALJ applied the five-step analysis
and determined that plaintiff was not entitled to SSI or DIB.  As
an initial matter, the ALJ found that plaintiff had met the
insured status requirements of the Act through December 31, 2008.
A.R. 16.  In step one, the ALJ found that plaintiff established
that she had not engaged in substantial gainful activity since
September 12, 2005, the date of plaintiff's application for SSI
and DIB.  Id.  In step two, the ALJ found that plaintiff suffered
from the following severe impairments: HIV, an ulcer,
hypertension, scoliosis, generalized osteoarthritis, degenerative
disc disease, asthma, allergies, hemorrhoids and headaches.  Id.
In step three, having found these severe impairments, the ALJ
next found that plaintiff's medical conditions did not meet or
equal one of the listed impairments identified in the
Commissioner's appendix of listed impairments.  Id. at 17; see

also 20 C.F.R. § 404, 1520(a)(4)(iii). In step four, the ALJ found that plaintiff had the RFC to perform the full range of sedentary work. Id. at 17. The ALJ's RFC finding was based on multiple reasons.

First, the ALJ noted that plaintiff's behavior at the hearing diminished the veracity of her claims. Id. at 18. Specifically, he observed that despite her testimony that she was unable to stand for any length of time and could sit for only 30 minutes, she nevertheless took the subway to the hearing. Id. Second, the ALJ relied heavily on the evaluation of Dr. Tranese, the consultative examiner, which concluded that plaintiff was only mildly limited in frequent bending, squatting, kneeling and crouching and that she was unrestricted for sitting, standing and walking. Id.; see also A.R. 118-121. Third, the ALJ declined to consider Dr. Dreifus' evaluation of plaintiff, noting that as a chiropractor, Dr. Dreifus was not an acceptable medical source, and that she had not examined in plaintiff in almost a year. A.R. 120. Fourth, the ALJ noted that the DOC's decision to terminate plaintiff was a result of plaintiff's poor attendance record rather than her medical condition, and as such, was not relevant to his ultimate decision as to plaintiff's condition. Id. at 120. Finally, the ALJ found that none of plaintiff's medical issues diminished her ability to perform sedentary work because she was being treated successfully for her various

15

conditions.  Id. at 121. Based on these reasons, the ALJ found

that plaintiff's RFC allowed her to perform her prior work as a

clerical associate and was therefore not disabled.  Accordingly,

the ALJ denied plaintiff's claims for SSI and DIB.


**(4)**

**Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should

be reversed, claiming, inter alia,[11] that: (1) the ALJ erred in

assessing plaintiff's credibility and subjective complaints of

pain; (2) the ALJ failed to accord proper weight to the opinion

of Dr. Dreifus, plaintiff's chiropractor; (3) the ALJ did not

properly develop the record; and (4) the ALJ was biased, as

demonstrated by the hostility he exhibited toward plaintiff and

plaintiff's counsel during the hearing.[12]  Plaintiff's arguments

---

[11] Plaintiff sets forth numerous reasons as to why the
Commissioner's decision should be reversed.  In her Mem. of Law
in Opp'n to Def.'s Mot. for Judgment on the Pleadings ("Pl.'s
Br."), plaintiff challenges almost every aspect of the ALJ's
decision, excerpting over ten pages of testimony from the hearing
and setting forth arguments through the frequent use of
incomplete sentences.  Pl.'s Br. at 3-13.  As a result, many of
plaintiff's arguments are unclear and impossible to decipher.
Therefore, this opinion addresses those arguments that can be
gleaned from plaintiff's papers.

[12] Plaintiff also argues that the Appeals Council wrongly
found that the additional evidence submitted by plaintiff after
the ALJ denied her request for benefits did not constitute a
basis for changing the ALJ's decision.  A.R. 206.  Specifically,

are addressed in turn.

## a. Credibility of Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ erred in assessing her credibility and that the ALJ's decision to reject her subjective complaints of pain is not supported by substantial evidence. However, the ALJ properly exercised his discretion to evaluate the credibility of plaintiff's testimony.

"[T]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Mollo v. Barnhart, 305 F. Supp. 2d 252, 263-64 (E.D.N.Y. 2004) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). "It is the function of the Commissioner, and not a reviewing court, to pass upon the credibility of witnesses, and to set forth clearly its findings which form the basis for its decision." Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997), aff'd, 152 F.3d 920 (2d Cir. 1998) (internal citations omitted). Because the ALJ has the

_____

on March 3, 2008, plaintiff submitted to the Appeals Council a "Physician's Report of Disability" from the New York City Employees' Retirement System. A.R. 202-206. However, as plaintiff admits, this report was unsigned, undated and incomplete. Id. at 206. Furthermore, the report noted only that plaintiff suffered from depression and gave no indication that plaintiff was incapable of sedentary work. As such, the Appeals Council properly found that this report did not provide a basis for reviewing and changing the ALJ's decision.

benefit of directly observing a claimant's demeanor and other indicia of credibility, the ALJ's credibility assessment is entitled to deference. Tejada, 167 F.3d at 776. Thus, a "court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if her findings are supported by substantial evidence. Aponte v. Sec'y of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

In order to determine a claimant's credibility, the ALJ first examines whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). If the ALJ finds such impairments, he then evaluates the intensity and persistence of the symptoms to determine how they limit the claimant's functioning. 20 C.F.R. §§ 404.1529(c), 416.929(c). However, when the claimant's symptoms indicate a more serious problem than is established by the medical evidence, the ALJ must consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's

functional limitations and restrictions due to symptoms.  20
C.F.R. §§ 416.929(c)(3)(i)-(vii).

   In making a determination as to plaintiff's credibility, the
ALJ here found that plaintiff's medically determinable
impairments could reasonably be expected to produce the alleged
symptoms.  However, he also found that plaintiff's statements
regarding the intensity, persistence and limiting effects of the
symptoms were not entirely credible.  A.R. 18.  In support of his
decision to discount plaintiff's credibility, the ALJ pointed to
plaintiff's testimony concerning her activities of daily living.
Specifically, the ALJ noted that plaintiff took the subway to the
hearing and sat at the hearing for over an hour, despite her
claims that she unable to sit or stand for any length of time or
walk more than three blocks.  A.R. 18.  See Schaal v. Apfel, 134
F.3d 496, 502 (2d Cir. 1998) (holding that although observations
of a claimant's appearance made during a hearing should be
assigned only limited weight, an ALJ may take account of a
plaintiff's physical demeanor in weighing the credibility of her
testimony as to physical disability).  The ALJ also pointed to
Dr. Tranese's evaluation of plaintiff, which stated that
plaintiff was able to do her household chores on her own with
only the occasional help of her children, thus further
diminishing plaintiff's credibility.  A.R. 21.  Moreover, as
noted by the ALJ, although plaintiff did take different

medications for her ulcer, asthma, allergies and hemorrhoids, there was no indication that any of these conditions were being poorly controlled.  Id.  Finally, the ALJ noted that despite plaintiff's claims of HIV-related jitteriness, palpitations and night sweats, the medical evidence did not indicate any history of opportunistic infection.[13]  Id.  Accordingly, there was substantial evidence to support the ALJ's assessment of plaintiff's credibility.

**b. Treating Physician Rule**

Plaintiff claims that under the treating physician rule, the ALJ should have accorded some weight to the opinion of Dr. Dreifus, plaintiff's treating chiropractor.[14]  Under the treating physician rule set forth in the SSA regulations, an ALJ must give controlling weight to the opinion of claimant's treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ."  20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72,

---

[13] An opportunistic infection refers to "an organism capable of causing disease only in a host whose resistance is lowered, e.g., by other diseases or by drugs."  Stedman's Medical Dictionary 284870(27th Ed. 2000) ("Stedman's").

[14] In his decision, the ALJ stated that he declined "to accord [Dr. Dreifus'] opinion much weight...." A.R. 20 (emphasis added).

78-79 (2d Cir. 1999).  The ALJ must provide "good reasons" to explain the weight it gives to the opinions of a treating physician, and a "[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand."  <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999); <u>see</u> <u>also</u> 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.).

However, an ALJ is not required to give controlling weight to a chiropractor.  <u>Diaz v. Shalala</u>, 59 F.3d 307 (2d Cir. 1995).  Instead, it is within the ALJ's discretion "to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him."  <u>Id.</u> at 314.  As such, it was within the ALJ's discretion to accord little weight to the report of plaintiff's chiropractor, Dr. Dreifus.  Furthermore, the ALJ provided a "good reason" for doing so, noting that the report was unreliable because it was written by Dr. Dreifus almost a year after plaintiff's last visit.  As such, the ALJ properly weighed the report by Dr. Dreifus.[15]

---

[15] In a similar vein, plaintiff also argues that the ALJ should have accorded some weight to the DOC's decision to terminate her employment.  Specifically, plaintiff contends that her termination from the DOC indicates that she was, in fact, disabled and unable to perform her assigned duties at work. However, the ALJ correctly rejected plaintiff's termination from the DOC as having any dispositive effect on his decision.  There is no evidence that the DOC made a medical determination that plaintiff was disabled.  Rather, plaintiff continuously failed to

**c. Duty to Develop the Record**

Plaintiff contends that the ALJ did not fully develop the record because her treating physicians were never directly asked by the ALJ about plaintiff's functional limitations.[16]  Pl.'s Br. at 23-24.  However, because there was no additional probative information available from plaintiff's doctors concerning plaintiff's functional limitations, the ALJ cannot be faulted for not seeking further information.

An ALJ has an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996).  "This duty exists even when the claimant is represented by counsel," Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996), and "is particularly important when it comes to obtaining information from a claimant's treating physician."  Devora v. Barnhart, 205 F. Supp. 2d 164, 172-73 (S.D.N.Y. 2002).  Thus, "[w]hen the evidence received from the treating physician is inadequate to determine whether a claimant is disabled, the ALJ is obligated to recontact

---

show up for work because of an alleged disability, and the DOC responded in kind by terminating her.  See A.R. 162; see also Trager Hearing at 3.

[16] Plaintiff never explicitly argues that the ALJ breached his duty to develop the record.  However, this claim is implicit in plaintiff's argument that her treating physicians were not properly questioned by the ALJ regarding her ability to perform sedentary work.  See Pl.'s Br. At 23-24.

the treating physician in an attempt to obtain additional evidence or clarification." King v. Astrue, 06-CV-0692, 2008 WL 821999, at *4 (W.D.N.Y. Mar. 26, 2008); 20 C.F.R. § 404.1512(e). Indeed, when confronted with a medical record that contains inconsistences or gaps, an ALJ must make an affirmative effort to seek out more information, sua sponte. See Rosa, 168 F.3d at 79; see also Schaal, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it [is] the ALJ's duty to seek additional information from [the treating physician] sua sponte."); cf. Perez, 77 F.3d at 48 (holding that where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim). An ALJ "cannot substitute his opinion for that of the treating physician" and "replace the diagnosis of the doctor who knows the patient best with his own reading of the claimant's history" in order to clarify ambiguities in the record. Peed v. Sullivan, 778 F. Supp. 1241, 1247 (E.D.N.Y. 1991). However, "where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa, 168 F.3d at 79 n.5 (citing Perez, 77 F.3d at 48).

As evidence that the ALJ failed to develop the record,

plaintiff points to the fact that one of her doctors, Dr. Gelin, was not asked to testify at the hearing about plaintiff's functional limitations.  However, it is unlikely that Dr. Gelin could have provided any useful additional evidence.  As described above, Dr. Gelin completed a "Physician's Wellness Rehabilitation Plan Report" on December 18, 2006, which diagnosed plaintiff with general osteoarthritis, radiculopathy, a peptic ulcer, asthma, lower back pain, allergic rhinitis and hemorrhoids.  A.R. 139-40. Despite these diagnoses, Dr. Gelin noted that he would have needed more information to determine plaintiff's capacity to participate in work-related activities.  Id.  Thus, even if the ALJ had attempted to acquire more information from Dr. Gelin about plaintiff's functional limitations, Dr. Gelin could not have added anything to the record other than speculation. Moreover, after filing her claim for SSI and DIB in October 2005, plaintiff did not see Dr. Gelin until July 2006, over nine months later.[17]  A.R. 19, 147.  Given this gap of time, Dr. Gelin was hardly in a position to provide useful and probative information regarding plaintiff's functional limitations at the time of her

---

[17] Furthermore, Dr. Gelin's July 2006 examination of plaintiff did not even yield any evidence of disability.  Quite the contrary, an x-ray ordered by Dr. Gelin at that time was negative.  A.R. 19, 147.

termination and application for benefits.

There was also no evidence to indicate that further
questioning of plaintiff's other physicians would have revealed
any useful information about plaintiff's ability to perform
sedentary work. See Katsigianis v. Astrue, 06-CV-6295, 2009 WL
750215, at *7 (E.D.N.Y. Mar. 19, 2007) (holding that the ALJ
properly developed the record even though he did not seek
additional information from claimant's treating physicians
because "there was nothing presented at the hearing to indicate
that retrospective assessments would have revealed any useful
information"). Although plaintiff's various medical reports and
test results provided in the record demonstrated that plaintiff
suffers from many different ailments, there was no indication in
these materials that her doctors believed that she was disabled
and unable to perform sedentary work.

Finally, in addition to the fact that there appeared to be
no supplemental probative information to be sought from
plaintiff's physicians, the ALJ already had before him a
voluminous record, which contained an in-depth look at
plaintiff's medical history from August 2002 to August 2007. At
the hearing, the ALJ asked plaintiff many pertinent questions
about her symptoms, medication, daily activities and ease of

mobility, ostensibly in an attempt to gather as much information as possible. Thus, there were no gaps that would have made further inquiry necessary. Accordingly, the ALJ satisfied his duty to develop the record.

### d. ALJ's Bias

Plaintiff argues that the ALJ was biased and hostile towards her. Pl.'s Br. at 14, 17-19. Specifically, plaintiff claims that the ALJ insulted claimant, asked leading questions over the objection of counsel, rushed the hearing and limited the cross examination of the vocational expert. Id.

According to 20 C.F.R. § 404.940, "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party . . . . " "[W]hen the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004). To determine whether an ALJ exhibited bias against a claimant, courts consider factors such as "a clearly manifested bias or inappropriate hostility toward any party, "a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party," and "a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party." Id.

Applying these factors here, the ALJ was not prejudiced against plaintiff. There is no indication in the record that the ALJ refused to consider plaintiff's evidence and testimony. Quite the contrary, the ALJ questioned plaintiff extensively regarding her illnesses, symptoms, medications and daily activities and considered plaintiff's testimony in his written decision.[18] In fact, the only indication of hostility in the hearing transcript was the behavior of plaintiff's counsel towards the ALJ. Plaintiff's counsel objected needlessly on multiple occasions and cross-examined the vocational expert in an overly aggressive fashion. See A.R. 253-256. As such, the record fails to show that the ALJ was hostile to plaintiff, and remand to a new ALJ is therefore unnecessary. Cf. Sutherland, 322 F. Supp. 2d at 292 (remanding to new ALJ due to ALJ's hostile behavior towards claimant).

## Conclusion

Accordingly, the Commissioner's Motion for Judgment on the Pleadings is granted and the ALJ's decision is affirmed. The

---

[18] As evidence of bias, plaintiff points to the following statement made by the ALJ to plaintiff: "I think you are brighter than your attorney does [sic]." A.R. 222. However, this statement hardly indicates the ALJ's bias. Rather, the ALJ was merely responding to counsel's unreasonable objection that it was necessary for the ALJ to define "side effect" to plaintiff.

Clerk of the Court is directed to enter judgment and to close

this case.

Dated:      Brooklyn, New York
            June 22, 2010

                                    SO ORDERED:
                              _____/s/_____
                                    David G. Trager
                                    United States District Judge